## LIVINGSTON, *appellant*, and REYNOLDS, *respondent*.

It is *waste* for a tenant to cut down and use wood growing on the demised premises to burn *brick* for sale, where he has covenanted not to cut down, destroy, or carry away any more wood or timber than should be actually used and employed on the farm, and that he would not make any manner of waste, sale or destruction of the wood or timber.

An *appeal* lies from an order of the Chancellor *dissolving* an injunction to prevent waste.[*]

APPEAL from Chancery. Mary Livingston, the appellant filed a bill in chancery against James Reynolds the respondent, charging him with *waste* as the tenant for lives of a farm, the *reversion* of which belongs to the appellant. The farm contains about one hundred and eighty acres, and was demised, in 1799, to one *John* Reynolds. At the time of the demise of the one hundred and eighty acres, there was a lease executed by the same lessor to the same lessee of a *wood lot* of thirty acres, immediately adjoining the one hundred and eighty acres, which together with the principal lease was assigned by the lessee to the present tenant. The lease for the one hundred and eighty acres contained a covenant on the part of the lessee that he would " not injure, cut down, take, destroy or carry away, upon, or from the hereby demised farm, any more wood or timber than shall be actually used and employed thereon," and that he would " not make, or suffer to be made, any

---

[*] See 16 Wendell 373.

1841.

Livingston
*v.*
Reynolds.

manner of waste, sale or destruction in the wood or timber as aforesaid, by any ways or means whatsoever." In May, 1838, the defendant cut about twenty cords of wood on the one hundred and eighty acre lot, with which, in the autumn of that year he burnt a brick-kiln, the *clay* for the brick being dug on the same lot. The brick were burnt to be sold, and about one-half of the quantity made were accordingly disposed of; the residue remaining on hand. The quantity of *wood land* left on the one hundred and eighty acre lot did not exceed eight or ten acres. The complainant prayed for an *injunction* and *subpœna;* and an *injunction* was accordingly issued, enjoining the defendant from cutting down any more wood standing and growing on the one hundred and eighty acre lot, and from digging up the soil thereof for the purpose of making brick; but permitting him to cut wood and timber for fencing and fuel. The defendant put in an answer insisting that he had the right to cut wood to burn brick, and that the wood charged to have been cut was not needed to be left standing for any useful purpose: the thirty acre wood lot affording an ample supply of fuel and timber for all useful purposes upon the farm; and that the land from which the wood was cut is excellent arable land, and more valuable for agricultural purposes than it was when the wood was upon it. Upon the answer, and affidavits corroborating it, the defendant moved for a *dissolution* of the injunction. The Chancellor *dissolved* the injunction, delivering the following opinion:

" This is an application to dissolve an injunction restraining the defendant, who is a lessee of the premises for lives, from digging up the soil for the purpose of making brick, or from cutting any wood or timber except for fencing or fuel. The covenant in the lease is that the lessee will not cut down, take, or carry away upon or from the farm any more wood or timber than shall be actually used and employed thereon, and will not make or suffer to be made any manner of waste, sale, or destruction of the

wood or timber as aforesaid by any ways or means whatsoever. It appears by the answer that no waste has been committed and no wood cut down to be carried off the premises; but that the defendant has cut and claims the right to cut the wood for the purpose of burning brick at a brick kiln on the premises, and to use the clay for the purpose of making brick.

The restriction in this lease does not prevent the defendant from cutting wood for the burning of brick on the premises, any more than from using it for fuel for his house, provided it is not contrary to good husbandry; so as to be included in the general prohibition against waste. It is not alleged in the bill that the burning of bricks is an unusual business on this and other farms in the neighborhood, or that it is contrary to good husbandry to use a portion of the wood for that purpose; or even that the burning of bricks is a new business which was not carried on there at the time of giving the lease.

Upon the facts as they now appear I think the injunction should be dissolved, and that the complainant should be left to her remedy at law, by an action of covenant or of waste, if the burning of bricks or cutting wood for that purpose is actual waste. It does not appear to be a case of sufficient importance to authorize this court to interfere by a preliminary injunction before the complainant has established her right at law. The injunction must therefore be dissolved."

A decree was entered accordingly, from which the complainant appealed to this court. The case was argued here by:

*J. Sutherland,* for the appellant.

*H. Hogeboom,* for the respondent.

*Points submitted and argued on the part of the appellant:*

I. From the covenants in the lease, and from the fact, that a lease of a wood lot for the use of the farm was exe-

1841.

Livingston
v.
Reynolds.

cuted at the same time to the same party, it is evident that the farm was cultivated and mostly cleared at the time of the execution of the leases to John Reynolds.

II. Whether the business of burning bricks on the farm, was or was not a new business, or whether it was or was not carried on there at the time of giving the leases, if material, should have been stated affirmatively by the defendant in his answer, and could not be required to be shown negatively by the complainant in her bill. The business of burning bricks is no part of husbandry, good or bad.

III. The cutting and burning the wood for the purpose of making bricks for sale, the clearing of three acres in one place, and of about one acre in another, the digging of clay for the purpose of making bricks, charged by the bill and admitted by the answer, are in judgment of law, waste. There is nothing to be left to the discretion of a jury, or to be determined by testimony, but the amount of damages. 2 *Black. Comm.* 281, 282. *Woodfall Land. and Ten.* 217, 229, 230. *Co. Litt.* 53, *a. b.* 1 *Cruise Dig.* 64, 65, 66 *and* 67, § 25.

IV. It was therefore the duty of the Chancellor to interpose, and by injunction restrain the commission of further waste, and the injunction which was granted ought not to have been dissolved. *Eden on Injunctions*, 115. 3 *Black. Comm.* 438. *Kane* v. *Vanderburgh and others*, 1 *Johns. Ch. Rep.* 11. *Gibson* v. *Smith*, 2 *Atkins*, 182. *Hawley* v. *Clowes*, 2 *Johns. Ch. Rep.* 122. 3 *Id.* 311. 4 *Id.* 21. 5 *Id.* 169. 6 *Id.* 497. 1 *Hopkins*, 342. 1 *Paige*, 97. 3 *Id.* 259. 5 *Id.* 522.

*Points submitted and argued on the part of the respondent:*

I. The cutting and burning of the wood mentioned in the bill and answer constituted no waste, and did not infringe the covenant in the lease, even if appropriated to no useful purpose. The wood cut was in patches or small parcels.

There was an abundant supply of wood and timber on other parts of the farm. Most of the wood cut was entirely unsuitable for timber. The land, when cleared, became good arable land, and valuable for agricultural purposes. Such as was suitable, was devoted to fencing and fuel. The land was more valuable and profitable, when cleared, than when in wood. It was entirely consistent with good husbandry to cut off the wood. If the land cleared was suitable and proper for cultivation, it is no waste to cut off the wood and timber, even though no use be made of the wood and timber cut. *Jackson* v. *Brownson,* 7 *Johns. R.* 233.

II. The appropriating of the wood cut to the making and burning of brick, and the subversion of the soil for the same purpose, were not a breach of the covenant in the lease against waste. The lease contains no prohibition against using the wood and soil for the purpose of making brick. The bill of complaint does not charge in terms that such use of the wood and soil constitutes such waste. It does not charge that the burning of bricks is an unusual business; that it is contrary to good husbandry; or that it has not been carried on for years; or was not, when the lease was given. Any appropriation of the wood and soil, which does not work a permanent or essential injury to the inheritance, is not waste. 7 *Johns. Rep.* 235. 3 *Paige's Rep.* 259.

III. The case, when most favorably viewed for the complainant, leaves the question of waste or no waste doubtful; the remedy at law is clear and ample; the damages are trivial; and the amount in controversy small. In such cases, the court of chancery does not interfere by preliminary injunction. " To what extent wood may be cut before the tenant is guilty of waste, must be left to the sound discretion of a jury under the direction of the court." *Van Ness, J.* 7 *Johns. Rep.* 233. *Spencer, J.* *Id.* 237. The complainant has an ample remedy at law by action of covenant or of waste. *Id.* 2 *R. S.* 258.

1841.

Livingston
*v.*
Reynolds.

1841.

Livingston
v.
Reynolds.

The land used for burning bricks lies low, is of clay soil, is washed by the creek, is only a quarter of an acre in extent, is only fit when improved for grass or hay, and may be rendered suitable for that purpose as easily as after a succession of crops. The land from which the wood has been cut, is more valuable now than heretofore. Under these circumstances, the court of chancery does not interfere—at any rate until the complainant has established her right at law. 4 *Johns. Ch. R.* 21.

IV. The injunction was rightfully dissolved, because it restricted the appropriation of wood and timber solely to purposes of fencing and fuel. The permission to cut and use the wood and timber should at least have been extended so far as to include repairs upon all buildings and erections on the premises. 2 *R. S.*

After advisement, opinions were delivered by Mr. *Justice* Cowen and by the President of the Senate. The opinion of the former will be found in 2 *Hill*, 159; the opinion of the latter is as follows:

By the President of the Senate. The bill filed in this cause sets forth a lease, alleges waste, and prays an injunction against future waste, and an account and satisfaction for that already committed. Upon the bill and accompanying affidavit an injunction was issued; an answer was put in and a motion made to dissolve the injunction. Upon the hearing of this motion, the Chancellor dissolved the injunction and dismissed the case on the ground, that " the case did not appear to be of sufficient importance to authorize the court to interfere by preliminary injunction before the complainant had established her right at law." From this order of the chancellor the complainant appeals to this court.

The main questions presented in this case for the consideration and decision of the court are: 1. Was the defendant below guilty of such *waste* as is prohibited by law, and unauthorized by the contract of the parties ? and

if so; 2. Was that waste such as to justify or require the Chancellor to interfere in the manner prayed in the bill ? The case seems to me very clear upon both these points.

The term *waste* is, in the law, a technical term. Under the adjudications of the courts it has acquired a precise and definite meaning. That the acts of the defendant, alleged in the bill, admitted in the answer, or proved in the case, constituted *waste*, I entertain no doubt. The question arises, whether such waste was authorized by the contract of the parties contained in the lease ? I think a fair interpretation of the covenants of that lease will clearly show that, so far from being authorized, it was expressly prohibited. The clause of the lease applicable to this point is as follows: " And also that he, the said party of the second part, shall not, nor will not, injure, cut down, take, destroy, or carry away, upon, or from the hereby demised farm, any more wood or timber than shall be actually used and employed thereon; and shall not, and will not, make or suffer to be made any manner of waste, sale, or destruction in the wood or timber as aforesaid, by any ways or means whatsoever." Under this lease, and the common law, the tenant was entitled to all necessary materials, whether of timber, clay, or stone, for reasonable and necessary use and repairs on the premises. He was, in the ancient but well defined language of the law, entitled to reasonable and customary *estovers*, such as *house-bote*, *fire-bote*, *fence-bote*, *plough-bote*, &c. but *brick-bote* for sale is, I believe, unknown to the common law, as it is to all other law. But the Chancellor says that " The restriction in this lease does not prevent the defendant from cutting wood for burning brick on the premises, any more than for using it for fuel for his house, *provided it is not contrary to good husbandry, so as to be included in the general prohibition against waste.*" I know not what may be the peculiar ideas of the Chancellor of *good husbandry;* but if they consist with the digging up of the soil, the cutting down of valuable timber, and the using of both in

making brick for sale off the demised premises, then his ideas as well of *husbandry*, as of *waste*, must differ materially from the generally received opinion of the world in relation to both. In England, where their system of agriculture, from the peculiar circumstances and necessity of the case, is more fixed and regular than ours, the conversion not only of woodland, but even of meadow and pasturage, into arable, and the reverse ; as well as that of meadow and pasturage into woodland, and the reverse, would be deemed waste. Although these strict rules of the old world may not have been adopted, in all their rigor, among the broad and fertile acres of our own young and free country, yet I believe that the Chancellor's peculiar notions of *good husbandry* have never obtained currency even among the most irregular and slovenly cultivators of our soil.

But it is said that clearing the land of its timber and reducing it to cultivation, was a benefit rather than an injury to the estate; and, therefore, was not waste. What may be an immediate benefit to the tenant, may be a permanent injury to the landlord. Besides, if it were really advantageous and desirable to reduce this woodland into cultivation, its being done by the tenant without the consent of the landlord, would injure the latter in just so far as the value of the timber exceeded the expense of cutting it down and clearing the land. But injury is not, as has been said in this case, the *test of waste*; but disherison of him in remainder or reversion. The tenant in this case has destroyed timber which he cannot reproduce; and has carried off the demised premises soil, which he cannot restore. This is disherison. The estate in remainder or reversion is *wasted*. Whether the injury, resulting from that *waste*, be much or little, it is in either case still *waste*. But the Chancellor says that the case did not appear of sufficient importance to authorize the court to interfere by a preliminary injunction. This brings us to a consideration of the second point above stated.

If what has been already said on the first point be at all correct, quite enough did appear in the case to show that waste had been committed; and even admitting that the injury resulting to the complainant were even less considerable than it seems to have been viewed by the Chancellor, that would not have materially varied the case. The object of the bill was evidently to obtain an injunction against *future waste*, rather than an account and satisfaction for that already committed. The acts which constituted the waste done, were not only admitted by the defendant, but his right to perform such acts was asserted, and his intention of repeating them openly avowed. Now, the claim of such a right, and the threat of exercising it were of themselves, even without any overt act, sufficient to constitute a case of equitable cognizance; but when the sincerity of such claim of right, and the good will of such threat of its exercise were verified by aggravated acts of waste already committed, these were quite sufficient, not merely to justify, but to require the prompt and effective interference of equity. That interference should have been had. An account and satisfaction of the *waste* already committed should have been decreed, and the injunction should have been rendered absolute and perpetual.

My vote in this case will be given in conformity with these views.

On the question being put, *Shall this decree be reversed?* all the members of the court present who had heard the argument, answered in the affirmative. Whereupon the decree of the Chancellor was REVERSED.