WASHINGTON SPECIAL TERM, February, 1849.  *Paige,*
Justice.

KIDD and others *vs.* DENNISON and others.

The doctrine of waste, as understood in England, is not applicable to a new and unsettled country.  *Per* PAIGE, J.

Where the whole of a farm, when leased, is in a wild and uncultivated state, with the exception of a few acres, and for the use of it the lessee agrees to pay a rent, the parties will be held to have intended that the lessee should be at liberty to fell part of the timber in order to fit the land for cultivation.

But this right will not authorize the lessee to destroy all the timber, and thereby irreparably injure the premises, or permanently diminish their value.

To what extent wood may be cut before the tenant is guilty of waste, must, in an action at law, be left to the sound discretion of the jury, under the direction of the court, as in other cases.

Where a tenant cuts trees upon the demised premises, not for the purpose of preparing the land for cultivation, but for the sake of the profit to be derived from a sale of the timber, he is guilty of waste.

Although a tenant for years may, from the commencement of his term, gradually clear up the woodland and prepare it for cultivation, yet he will not be permit-

ted, just before the expiration of his lease, to cut down timber, upon that pretext.

Relief is granted, in cases of that kind, upon the same principles on which an injunction is issued to stay what is called equitable waste.

Where a contract is made for the sale of land the vendor is, in equity, immediately deemed a trustee of the vendee of the real estate, and the vendee a trustee of the vendor, as to the purchase money. And the vendee is treated as the owner of the land, and the money is treated as the personal estate of the vendor.

In Equity. The bill in this cause was filed to restrain the defendants from committing waste on a farm in Berlin, Rensselaer county, and for an account for waste already committed. The bill stated that Stephen Van Rensselaer leased the farm to *Daniel Dennison* for the term of 60 years, by an indenture of lease dated June 23d, 1791. The lease described the farm as an improved farm, and as containing 176 acres, and contained a covenant on the part of the lessee that he would not commit waste. The defendants claimed under the lessee. The plaintiffs, in their bill, stated that by a conveyance bearing date the 18th of September, 1846, the plaintiffs became seised and possessed of the estate in the reversion of the farm, and of the rents reserved in the lease ; and they alleged that the defendants had been, and were, committing waste on the farm. The defendants, in their answer, denied that they had committed waste. They stated therein that at the time of the conveyance to the plaintiffs about 100 acres of the farm was covered with wood and timber ; that the wood and timber did not constitute the principal value of the farm ; that at the time the original lease was executed only about 25 acres of the farm had been cleared ; that one of the objects of the lease was the clearing up and preparing the farm for cultivation ; that the lessee and his assigns had cleared up and improved all but 100 acres of the farm, and that the farm would be increased in value by clearing the whole, except 25 or 30 acres to be reserved as a wood lot for the use of the farm. The defendants admitted that since the plaintiffs acquired the title to the reversion, and the rents, they had sold by contract the trees standing on two acres of the farm for the sum of $10, and that a portion of the trees on the two acres had been cut and carried away. They alleged that the two acres would

Kidd v. Dennison.

· be increased in value by cutting off, and removing therefrom, the timber on the same. The defendants also admitted that they had, since the conveyance to the plaintiffs, cut from the farm 20 basswood trees, not exceeding in value $15 or $20. The defendants further alleged in their answer, that the plaintiffs, before they filed their bill, sold all their interest in the farm to one Samuel Hull, and insisted that the plaintiffs had no equitable interest in the premises, and had no right to ask for the relief prayed for in their bill. The proofs showed that Kidd, one of the plaintiffs, in his own name, on the 9th of July, 1847, gave to Hull a written contract for the sale of the farm to him, and in it · agreed to convey the same to Hull by a warranty deed, on payment by Hull to him of a note for $500 with interest, on the 1st day of November, 1847, and on the execution and delivery to him, by Hull, of the bond and a mortgage of the latter on the premises for $1363, payable with interest. It was proved, by the admission of Kidd, that Hull had paid him $500 on the contract for the sale of the farm. The defendants did not aver, in their answer, that they sold the timber on the two acres, and cut the basswood trees, for the purpose of preparing the land for cultivation. Several witnesses were examined, to the question whether the farm would be more or less valuable by clearing up and preparing for cultivation 50 or 60 acres of that part of it now covered with timber. On that question there was a conflict in the evidence.

*H. Z. Hayner*, for the plaintiffs.

*J. Holmes*, for the defendants.

PAIGE, J. The farm in question was undoubtedly leased to the lessee for agricultural purposes. The lease describes it as an improved farm. At the time the original lease was executed, in 1791, only 25 acres had been cleared. The lessee had no other way of enjoying the premises except by clearing and preparing them for cultivation. This could not be done without felling the timber. If he cut down the timber for the pur-

pose of preparing the land for cultivation, the severance of the trees from the freehold was not unlawful, and a sale of them after severance was a right incident to that of clearing the land for the purpose of agricultural improvement. The doctrine of waste, as understood in England, is not applicable to a new and unsettled country. At the date of the lease in this case, this was the condition of the country where the farm in question was situated. The whole of the farm, consisting of 276 acres, when originally leased was in a wild and uncultivated state, with the exception of a few acres; and for the use of it the lessee was to pay a rent. The parties must therefore have intended that the lessee should be at liberty to fell part of the timber to fit the land for cultivation. But this right did not authorize the lessee to destroy all the timber, and thereby irreparably injure the premises, or permanently diminish their value. Rules of good husbandry require that the lessee or his assignees should preserve so much of the timber as is necessary to keep the buildings and fences in repair, and to supply the farm with fuel. If they do not leave sufficient timber for these purposes they will be guilty of waste. To what extent wood may be cut before the tenant is guilty of waste must, in an action at law, be left to the sound discretion of a jury, under the direction of the court, as in other cases. (*Jackson* v. *Brownson*, 7 *John.* 233, 235, *per Van Ness and Spencer, justices. Moores* v. *Wait,* 3 *Wend.* 107. *Cooper* v. *Stower,* 9 *John.* 333. 4 *Kent's Com.* 76. *Jackson* v. *Anchen,* 18 *John.* 431.) The original lessee and his assigns would doubtless have been justified in felling the timber on some 50 or 60 acres of the present woodland of the farm in question, for the purposes of cultivation, and agricultural improvement. But they had no right to cut down the timber merely for the purposes of sale and profit, without any reference to preparing the land for cultivation. (*Coke Lit.* 53 *b.*) I do not think that the principal question in this case is, whether the clearing up and preparing for cultivation 50 or 60 acres of the woodland of this farm would render the farm more or less valuable. For I believe that the original lessee, and his assigns, had a right, under the lease, to

fell the timber on the land for the purpose of fitting it for culti-
vation, without being guilty of waste, provided they left a suf-
ficient quantity of timber for all the purposes of the farm,
although by so doing they diminished the value of the farm.
One and the principal question which the case presents is,
whether the timber which has been cut off by the defendants since
the plaintiffs acquired title to the rents and reversion, was cut
for the purpose of preparing the land for cultivation. The
question is not whether the land would be rendered more or
less valuable by stripping it of its wood and timber, and fitting
it for cultivation ; or whether according to the rules of good
husbandry it would be proper to prepare for cultivation that
part of the woodland on which the timber stood which has been
felled. The felling, by a tenant, of any timber trees which by
the custom of the country are considered as timber, and which
are used for the erection or reparation of buildings, is waste.
So the changing the course of husbandry, as, converting mead-
ow land into arable, or *e converso*, is waste. So if the tenant
materially changes the nature and character of the buildings, it
is waste, although the value of the property should be enhanced
by the alteration. (*Cruise, tit. Estate for life*, §§ 14, 15, 18 *to*
22, 26. 3 *Paige*, 259. *Coke Lit.* 53, *a. b.* 14 *Ves.* 526.
1 *John. Ch.* 435. 2 *Story's Eq. Jur.* § 913. 2 *Bouv. L. Dic.*
624, *Waste, and cases cited.*) In *Jackson* v. *Andrews*, (18 *John.*
433,) the court say that "a tenant cannot, under the pretence of
advantage to the reversioners, change the nature of buildings,
and many cases show that such changes, though beneficial,
would be waste." The tenant has no authority to assume the
right of judging what may be an improvement to the inherit-
ance. He must confine himself to the conditions of his lease.
In *Winship* v. *Pitts*, (3 *Paige*, 262,) the chancellor says a ten-
ant has no right "to make improvements or alterations which
will materially and permanently change the nature of the prop-
erty, so as to render it impossible for him to restore the same
premises, substantially, at the expiration of the term." In *Jack-
son* v. *Tibbits*, (3 *Wend.* 341,) the alterations did not amount
to a change of the nature of the building. The remark of

Marcy, J. in that case, that the acts done to constitute waste must in fact be prejudicial to the plaintiffs' estate in the premises, was *obiter.* The doctrine is stated in *Bacon's Ab. tit. Waste,* (*C.*) as follows: " It has been held that a lessee or tenant cannot change the nature of the thing demised; though in some cases the alteration may be for the greater profit of the lessor. Thus if a lessee convert a corn mill into a fulling mill it is waste; although the conversion be for the lessor's advantage." (*London* v. *Creyme, Cro. Jac.* 182. *Cole* v. *Green,* 1 *Lev.* 309. *Bac. Ab. Waste, C.* 4.) So converting a meadow into an orchard is waste, although it increases the profit of the occupier. (*Bac. Ab. Waste,* (*C.*).)

In *Livingston* v. *Reynolds,* (26 *Wend.* 122,) the president of the senate, in his opinion, says, " If it were really advantageous and desirable to reduce this woodland into cultivation, its being done by the tenant without the consent of the landlord, would injure the latter, in just so far as the value of the timber exceeded the expense of cutting it down and clearing the land. But injury is not, as has been said in this case, the test of waste, but disherison of him in remainder or reversion. The tenant in this cause has destroyed timber which he cannot reproduce, &c. This is disherison. The estate in remainder or reversion is wasted." The standing wood was cut, in the case of *Livingston* v. *Reynolds,* for the purpose of burning brick on the demised premises, to be sold. The wood was not cut down for the purpose of fitting the land for cultivation. The defendant in that case, in his answer, insisted that the land from which the wood was cut was excellent arable land, and more valuable when prepared for cultivation than it was when covered with timber; and that the wood cut was not needed to be left standing for the use of the farm. (*See the same case reported in* 2 *Hill,* 157.)

The defendants in this suit, in their answer, admit that they have sold the timber on two acres of the woodland of the farm, and have cut down about 20 basswood trees. But they do not allege that they sold the timber on the two acres, or cut the basswood trees, for the purpose of preparing the land for cultivation. And

Kidd v. Dennison.

I think the proof very clearly shows that the object of the de-fendants in cutting the basswood trees and the spruce timber mentioned by the witnesses, was the profit to be derived from a sale thereof; and that that was also the object of the sale of the timber on the two acres. If this was the purpose which the defendants had in view in felling the basswood and spruce trees, and in selling the timber on the two acres, and not the prepara-tion of the land for cultivation, then they have been guilty of waste, and are liable to the owners of the inheritance for the value of the timber cut, and for the injury to the land. (*Cruise, tit. Estate for Life*, § 49. 4 *Kent's Com.* 76.) Even if a ten-ant cuts down trees for the purpose of repairing the buildings on the demised premises, he is guilty of waste if he afterwards sells the trees, although subsequent to the sale he purchases back the trees, and employs them in the reparation of the build-ings. It is the vendition which makes the cutting waste. So a tenant cannot sell trees, and with the money received on the sale cause the buildings to be repaired. (*Coke Litt.* 53, *b.*) If it was not too near the expiration of the lease, when the bill in this suit was filed, to enable the defendants to clear up the woodland, and put it in a proper condition for tillage, by the time the lease expired, certainly the unexpired term of the lease does not now afford sufficient time for this purpose. The court of chancery in England will not permit a tenant for years with-out impeachment of waste, to fell timber just before the expira-tion of his lease. In *Abraham* v. *Bull*, (2 *Freem.* 63,) a tenant without impeachment of waste began to fell the trees about half a year before the expiration of his term, and on application to the court of chancery an injunction was granted against him. (1 *Cruise's Dig. tit.* 8, *Estate for years*, ch. 2, §§ 13, 14.) The reason assigned in that case for granting the injunction was, that although the tenant might have felled trees, every year from the beginning of the term, which if he had done they would have been growing up gradually, yet it was unreasonable that he should let them grow until near the end of his term and then cut them all down. So in this case, although the tenant could, from the commencement of his lease, have gradu-

ally cleared up the woodland and prepared it for cultivation, yet he ought not to be permitted, so near the expiration of his lease, to cut down the timber; because he could not put the land, by the time the lease expired, in a proper condition for tillage. Relief is granted, in a case of this kind, upon the same principle that an injunction is granted to stay what is called equitable waste. (2 *Story's Eq. Jur.* §§ 912, 913, 914, 915.)

The defendants insist that the plaintiffs have not such an interest in the premises as entitles them to the relief sought by this bill. It is contended that Samuel Hull, under his contract of sale from Kidd, has the equitable title to either the whole or to a moiety of the premises, and that he was therefore a necessary party to the plaintiffs' bill. I must infer from the allegations in the bill, and the admissions in the answers, that the plaintiffs purchased the rents reserved in the original lease, and the reversion in the demised premises, in their own right as individuals, and not as trustees. If the rents reserved, and the reversion, had been conveyed to them as trustees, Hull would have acquired no right or title to the farm under his contract from Kidd. In all cases of trust delegated for mere private purposes, the trustees, if alive, must all join in executing the trust; and if a conveyance is executed by only a part of the trustees, it is absolutely void. (*Sinclair* v. *Jackson*, 8 *Cowen*, 543, 553, 563, 582. 1 *Cruise*, tit. 12, *Trust*, ch. 4, § 33. 14 *John.* 553. 6 *Id.* 39.) I must also infer from the bill and answers that the plaintiffs, under their deed of the 18th of September, 1846, acquired both the legal and beneficial interest in the reversion of the farm in question. If so, Kidd and Lansing were tenants in common, and Kidd had a right, without the concurrence of Lansing, to sell his moiety. Samuel Hull, therefore, under his contract with Kidd, acquired the equitable title to a moiety of the premises. He can compel Kidd to specifically perform the contract, as to the moiety of the farm owned by him. Where a vendor is unable to perform his contract in full, although he cannot compel the purchaser to accept a partial performance, yet the purchaser may, if he elects to accept a partial performance, compel the vendor to perform his

Kidd v. Dennison.

agreement as to the part of the land to which he has a good title. (5 *Paige*, 307, 308.  8 *Id.* 474.)  Where a contract is made for the sale of land, the vendor is, in equity, immediately deemed a trustee of the vendee of the real estate, and the vendee a trustee of the vendor, as to the purchase money.  And the vendee is treated as the owner of the land, and the money is treated as the personal estate of the vendor.  (*Swartwout* v. *Burr*, 1 *Barb. S. C. Rep.* 499.  2 *Story's Eq. Jur.* § 1212. 6 *John. Ch.* 402, 405.  3 *Id.* 316.)  Kidd, upon the pleadings and proofs in this case, must be regarded as the trustee of Hull as to a moiety of the farm.  And Hull, under his contract from Kidd, is entitled to a moiety of the damages which the defendants are liable to pay to the owners of the inheritance, for the waste committed by them since the date of the contract, or at least since November 1st, 1847, when Kidd was to give Hull a deed.  The question then arises, was Hull a necessary party to the suit?  He is interested in every part of the relief asked for in the bill; in the account sought to be taken for waste heretofore committed; in the prevention of future waste; and in restraining the defendant from removing the timber already cut. The general rule is that all persons materially interested in the subject matter of the suit ought to be made parties; and that *cestuis que trust*, as well as trustees, should be brought before the court, so as to make the performance of the decree safe to those who are compelled to obey it, and to prevent the necessity of the defendant's litigating the same question again, with other parties.  The only exception to the general rule that the *cestui que trust* must be made a party to a suit brought by a trustee, appears to be the case of assignees, or the trustees of a fund for the benefit of creditors, who are suing for the protection of the fund, or to collect moneys due to the fund, from third persons. (*Christie* v. *Herrick*, 1 *Barb. Ch. Rep.* 260, *per Chancellor Walworth*.)  Hull does not come within this exception to the general rule.  He was undoubtedly a necessary party to the suit.  *Non constat*, he has fully performed his contract with Kidd for the purchase of the farm, and is now entitled to a deed thereof.  Kidd, if he has not conveyed, is a proper if not a

necessary party to the bill. The legal title remains in him, which he holds in trust for Hull. The defendants do not specifically take the objection that Hull is a necessary party; but they allege that both the plaintiffs have transferred their interest in the premises to Hull, and that they are not therefore entitled to the relief asked for in the bill. Where the defendant takes the objection, by plea, answer, or demurrer, of the want of proper parties, and the plaintiff neglects to amend his bill by bringing in the necessary parties, it is in the discretion of the court, at the hearing, either to permit the cause to stand over upon payment of costs, to enable the plaintiff to bring the proper parties before the court, or to dismiss the bill with costs. (4 *Paige*, 64.) I will in this case adopt the former alternative, and direct the cause to stand over, to enable the plaintiffs to amend their bill by making Hull a party thereto. As the proofs already taken in the cause will be as material and relevant after Hull is made a party as they are now, I will only charge the plaintiffs with the costs of the hearing and of the defendants' further answer to the amended bill. The bill does not expressly charge that the defendants threaten to commit future waste. This charge may perhaps be implied from the allegation that the defendants are cutting the timber trees from off the farm. This may be sufficient, as the defendants do not deny, in their answers, that they intend to continue cutting down the timber. An injunction will not be granted on a vague apprehension of an intention to commit waste. (11 *Ves.* 54.) The right to an account for waste already committed is incidental only to the right to file a bill to prevent future waste. A bill will not lie merely for an account for waste; as the plaintiff has an ample remedy for such injury at law. And where a bill is filed to prevent future waste, and also to prevent the removal of timber already cut, the court will not, unless under very special circumstances, grant an injunction to prevent the removal of the timber already cut. ( *Watson* v. *Hunter*, 5 *John. Ch. Rep.* 168. 4 *How. Pr. Rep.* 175.)

This cause must stand over, to enable the plaintiffs to amend their bill by making Samuel Hull a party thereto, on payment to the defendants of their costs of the hearing and of their fur-

ther answer to the amended bill. And if the plaintiffs neglect, within forty days after notice of the order to be entered on this decision, to amend their bill by making Hull a party thereto, and to pay the costs aforesaid, their bill is to be dismissed with costs.

