PEIRCE & a., *Adm'rs, v.* BURROUGHS, *Ex'r.*

The assent of both parties is as necessary to a gift as to a contract.

When property in which there is a life estate is held by a trustee, and there is no evidence that a part of the property in his hands is income, it is presumed to be capital.

The ordinary taxes of property in which there is a life estate, and the ordinary expense of the care and management of the principal, are charges upon the life estate, to be paid out of the income.

IN EQUITY. Facts found, and questions reserved by the court.

*Hatch,* for the plaintiffs.

*W. H. Hackett,* for the defendant.

DOE, C. J. I. The defendant is executor of B. The plaintiffs are administrators of B.'s widow. By B.'s will, his widow took a life estate in all his property, and certain legacies were given to other persons payable at the termination of the life estate. One of these legacies, $100 bequeathed to W., was paid by the executor during the life of the widow, at her request. Whether she intended to pay it out of her property,—out of the income of the estate in the executor's hands,— and to make a donation of $100 to the remainder-man, enuring to his benefit at her death, as well as a donation of the income of $100 to W. during her life, or only to give W. the income of $100 during her life by authorizing the executor to pay W.'s legacy at once instead of waiting till it was due, is a question of fact to be determined at the trial term. Without any estoppel, her gift was what she intended it to be. 2 Kent Com. 438.

II. The testator owed a debt of $1000. The executor paid it, and charged the amount to the widow; and his account, including an item for the payment of the debt, was settled and allowed in the probate court upon the usual notice. It was the legal right of the widow that the debt should be paid out of the estate,—out of the principal, and not out of the income. She had a life estate in all the property left, after payment of debts and expenses of administration. She could make a gift of $1,000 to the remainder-man by paying the debt for him, as she could give him $100 by paying W.'s legacy. But we see no evidence that she gave the remainder-man anything. If, in the allowance of the executor's account in the probate court, a decree had been made that estopped her from denying that she gave the remainder-man $1,000, an appeal might be necessary to avoid the effect of the decree. But it does not appear that such a decree has been made. We take the meaning of the case to be, that, in the executor's account allowed by the probate court, he charged the estate, or credited him-

self, with the payment of the debt. It was the duty of the executor to pay the debt out of the estate (not out of the income which belonged to the widow), to charge himself with the estate received by him, and to credit himself with the payment of the debt: and the allowance of such an account would not show that the widow had given $1,000 to the remainder-man, or that she was estopped to deny that she had made such a gift.

III. A part of the estate was stock of various railroads. During the life estate the railroads issued new stock, giving stockholders the right to buy the new shares at par. The new shares being worth more than par, the right to take them was valuable property. Was this property given by the will to the remainder-man, or to the tenant for life ? Was it capital, or income ? A railway corporation cannot alter the wills of its stockholders by calling a dividend stock, or calling it earnings. Whether the dividend is the capital of a remainder-man, or the income of a life tenant, is a question which a mere bequest of a life estate and remainder does not submit to the decision of the railroad. *Lord* v. *Brooks*, 52 N. H. 72. In this case, it does not appear that the corporations called the right to buy new stock a dividend, or that they called it either stock or earnings. And, without any evidence tending to show that it was income, it should be regarded as capital. The capital in the hands of the executor existed before the income of that capital; and in the absence of all evidence on the question whether a certain fund or piece of property in his hands is capital or income, the presumption of fact is that it is capital. There being no evidence that the right to take new shares was property, or the proceeds of property earned by the corporations, or that it was in any sense income or profits, it is capital belonging to the remainder-man.

The plaintiffs claim that the executor gave the right to the widow. The question of gift is a question of fact for the trial term. The widow may have understood that the $100 legacy, and the $1,000 debt, were payable out of the capital; and she may have paid both, intending to give $1,100 to the remainder-man. The executor may have understood that the railway-share rights were a part of the capital belonging to the remainder-man; and he may have chosen to make himself liable to the remainder-man for the value of those rights by giving them to the widow. The widow and the executor may have understood that the $100 legacy and the $1,000 debt were her legal obligations, and that the railway rights were hers. It is not unlikely that they were both mistaken as to the respective legal rights of the life tenant and remainder-man. The property should now be divided according to their legal rights, and not according to erroneous ideas of those rights entertained by the executor or the widow. Into so much of the case as involves unsettled questions of fact, it is not for us to enter. Upon the facts presented to us, the widow was not chargeable for the $100 legacy, or the $1,000 debt: she was not entitled to the interest of the $100, after that sum was paid to W. at her

request : and she was entitled, not to the railway rights, but to the income derived from them.

IV. A part of the estate was bank stock. The ordinary taxes assessed upon the stock during the life estate were a charge upon the life estate. *Plympton* v. *B. Dispensary*, 106 Mass. 544, 547 ; *Patrick* v. *Sherwood*, 4 Blatchf. 112 ; *Fleet* v. *Dorland*, 11 How. Pr. 489 ; *McDonald* v. *Heylin*, 4 Phil. (Pa.) 73.

V. During the life estate the executor held and managed the personal property that yielded an income. Should his compensation for care and management of such property be paid out of the principal, or out of the income, or partly out of each ? If a person living upon a farm, and carrying it on himself for his own benefit, could annually take a part of it in fee to pay himself for carrying it on as long as he lived, he would have more than a life estate : his estate might absorb the whole. If a life tenant of a farm hires another person to carry it on, the farm cannot be sold or applied, altogether or piecemeal, to pay any part of the cost of getting an income from it for the life tenant, or to pay any part of the cost of keeping the farm in a reasonably good condition. The farm, kept in a reasonably good condition, is the capital vested in the remainder-man, and held for his future use : the estate of the life tenant is the net use and income during his life. The preservation of the capital, without expense to the remainder-man, is as much his right as the use, without payment of rent, is the right of the tenant for life. Waste of the remainder may be permissive as well as aggressive. A life tenant of a house may commit waste as well by suffering the house to decay for want of reasonable repairs, as by pulling it down or burning it. Though there be no timber growing upon the ground, yet the tenant must keep the house from wasting. If the tenant of a dove house, warren, or park, take so many that such sufficient store be not left as he found when he came in, this is waste ; and to suffer the pale to decay, whereby the deer are dispersed, is waste. It is waste to suffer a wall of the sea to be in decay, so as by the flowing and reflowing of the sea, the meadow or marsh becomes unprofitable. Co. Lit. 53 *a*, 53 *b* ; 2 Bl. Com. 281 ; 1 Washb. Real Prop. 107 ; *Wilson* v. *Edmonds*, 24 N. H. 517, 545 ; *Wood* v. *Griffin*, 46 N. H. 230, 238. Substantial damage to the remainder, done contrary to the ordinary course of good husbandry, by impoverishing fields by tillage *( Sarles* v. *Sarles*, 3 Sand. Ch. 601), or suffering pastures to become overgrown with brush *( Clemence* v. *Steere*, 1 R. I. 272), is waste. A tenant for life is bound to keep down ordinary charges for taxes and repairs, out of the rents and profits. *Cairns* v. *Chabert*, 3 Edw. Ch. 312. If the estate be charged with an incumbrance, he is generally bound to keep down the interest out of the rents and profits. 4 Kent Com. 74.; 1 Washb. Real Prop. 96.

The doctrine of waste is applicable to personal as well as real property, and is nothing more than the definition of life estate. With exceptions in regard to some articles of perishable property *( Burleigh*

v. *Clough*, 52 N. H. 267, 283), the general rule is, that the preservation of the capital by ordinary means is the performance of the life tenant's duty of not aggressively or permissively wasting the estate of the remainder-man. *Healey* v. *Toppan*, 45 N. H. 243. In *Gordon* v. *West*, 8 N. H. 444, the court allowed the executor one per cent. annually as compensation for his care and custody of the fund and for collecting the income, and charged three quarters of this expense upon the income and one quarter upon the fund. The ground of the latter charge was, that the preservation of the fund was beneficial to the remainder-man as well as to the tenant for life. But we are to inquire, not merely who is benefited by the preservation of the fund, but what was the intention of the testator,—what is the construction of the will. B. gave his widow a life estate : and a life estate is a net use and income, not including a diminution of the capital by the diversion of it to the payment of any part of the ordinary expenses of its preservation. The preservation of the capital during a life estate, by the shingling of a house, by payment of taxes or interest of an incumbrance, or by any other performance of the life tenant's duty of abstaining from permissive waste, is beneficial to the remainder-man ; but he is chargeable with no part of the expense of the performance of that duty. The performance of that duty by the life tenant is the right of the remainder-man. During life estates established by testators or by the law, waste of the capital accords as little with the general intentions of the former as with the general policy of the latter. Whatever exceptions there may be in cases of extraordinary expense, this case is within the general rule. The compensation of B.'s executor for care and management of the property, presumed to be an ordinary, because not shown to be an extraordinary, expense of the preservation of the capital (not including any of the expenses of administration), should be paid out of the income.

*Case discharged.*

BINGHAM, J., did not sit.