[No. 12387. In Bank. — March 30, 1888.]

## THOMAS MITCHELL, RESPONDENT, v. AMADOR CANAL AND MINING COMPANY, APPELLANT.

MORTGAGE — WATER-DITCH — NEW DITCH WHEN DOES NOT PASS BY FORE-CLOSURE SALE. — A decree foreclosing a mortgage on a water-ditch particularly described as lying between given termini, and a sheriff's deed given in pursuance thereof, does not operate to pass the title to a new and independent ditch subsequently constructed by a purchaser *pendente lite* from the mortgagor, along a different course and between different termini, for the purpose of being used by him in place of the mortgaged ditch, when the new ditch is not an appurtenance of nor an improvement on the original ditch.

ID. — WASTE — EQUITABLE REMEDY FOR. — The remedy for waste is ordinarily at law; but where relief is sought for the purpose of preserving the security of a mortgage, equity will interpose by injunction, both before and after a decree of foreclosure, to prevent future waste, and in the same action an accounting will be decreed, and compensation given for past waste.

EVIDENCE — ESTOPPEL — DECLARATIONS. — Where the plaintiff offers in evidence certain declarations made by the defendant, claiming that the same constitute an estoppel, evidence is admissible on behalf of the defendant of statements made by the plaintiff tending to show that he placed no reliance upon the declarations of the defendant at the time they were made, and did not then regard them as an estoppel.

APPEAL from a judgment of the Superior Court of Calaveras County, and from an order refusing a new trial.

The findings of the lower court show in substance that the Butte Canal and Ditching Company was incorporated September 19, 1857, to divert the waters of the north

fork of the Mokelumne River from a point known as Pine-log Crossing, in Amador County, and by means of ditches, flumes, etc., convey said waters therefrom to Hoodville, and other points south and west of Butte City, to be used for mining, agricultural, mechanical, and chemical purposes; that the said Butte Canal and Ditching Company was the owner of the said water, water rights, privileges, and franchises, etc.; that prior to August 12, 1868, the said Butte Canal and Ditching Company conveyed all of the said property, rights, water rights, privileges, and franchises to William Stickles, C. D. Horn, A. M. Harris, Isaac Tripp, and G. S. Tripp, co-partners, doing business as the Butte Ditch Company; that at the time alleged in the complaint said copartners, comprising said firm of the Butte Ditch Company, duly executed to the plaintiff the two mortgages mentioned in the complaint upon all of the said property, as security for the payment of the notes mentioned in the complaint, which mortgages were duly recorded in the office of the county recorder of Amador County.

That said Butte Ditch Company borrowed the money of the plaintiff, for which said mortgages were security, for the purpose of repairing, extending, and improving said property, and that said company, immediately after obtaining said money, expended a large portion thereof in the extension of the said ditch up the north fork of the Mokelumne River, twelve hundred or thirteen hundred feet above Old Pine-log Crossing, by means of an iron pipe having a carrying capacity of fifteen hundred inches of water, and by means of said pipe and ditch the waters of said stream were taken, used, and enjoyed by said Butte Ditch Company.

That on the 21st of January, 1870, the said Butte Ditch Company, for the improvement of the property which it had mortgaged, and so as to use the same to better advantage, changed the point of tapping said north fork of the Mokelumne River, up said stream to a

point about two hundred rods above Old Pine-log Cross-
ing, and on said day did fix the quantity of water claimed
by it at five thousand cubic inches of water, mining
measure, by the posting of a notice, and that the water
is diverted from said stream at said point under the same
franchises and rights of way formerly owned by said
ditch company.

That thereafter said mortgaged property was duly con-
veyed by the Butte Ditch Company to C. C. Bowman,
subject to said mortgages, the amount of the mortgages
being deducted from the price paid for the property by
Bowman, who assumed said mortgages, and agreed to
pay them.

That on July 16, 1870, said C. C. Bowman sold the
said mortgaged property to the Sutter Canal and Mining
Company, subject to said mortgages, and said company
assumed and agreed to pay the mortgages as part of the
purchase price thereof.

That the Sutter Canal and Mining Company, after
purchasing and taking possession of the mortgaged prop-
erty, called it the Sutter Canal and Mining Company's
Ditch; that the company bought the property aforesaid
with the intention of improving it, and did reconstruct
said ditch along the general course of the old Butte ditch
below a point called Bald Rock, on the north side of the
north fork of the Mokelumne River, and a part of the
way on the same location that the old Butte ditch occu-
pied; that this work of improvements and reconstruc-
tion was done by said company under the rights,
privileges, franchises, and water rights formerly owned
by the said Butte Ditch Company, and which were cov-
ered by the mortgages to this plaintiff, and that said
work was done in order to employ to better advantage
said rights, privileges, etc.

That the said improvements made by the Sutter Canal
and Mining Company consisted of a ditch larger than
the old Butte ditch, and were upon a grade of five feet

four inches less fall per mile, and extended from a point on Tanner's Ranch, above the town of Sutter Creek, to a point called the tunnel above Slab Town, and thence up the north side of the north fork of the Mokelumne River to a point called Bald Rock, about nine miles below the head of the old Butte ditch.

That from the tunnel to Bald Rock said ditch was on the same general line as the old Butte ditch, and was so constructed that, at the tunnel, the works constructed by the Sutter Canal and Mining Company were forty feet above the old Butte ditch, and from that point to the lower end of Bald Rock they approached each other, coming together at that point, where they connected, and constituted one continuous line of ditch at the time of the assignment of said property to Joseph Naphtaly, and at the time of the purchase thereof by the defendant; that in doing such work no attention was paid to the old Butte ditch, which was filled up and destroyed by the Sutter Canal and Mining Company below Bald Rock, and said company took and used the timber of which the flumes thereof were built for cabins for their workmen, blacksmith-shops, etc., and also took up the iron pipe, constituting a portion of the old Butte ditch, below Bald Rock, and appropriated the same to their own use.

That on April 6, 1870, and before Bowman or the Sutter Canal and Mining Company acquired such property, the plaintiff duly commenced an action for the foreclosure of his mortgages on the same; and on said date duly filed and recorded a *lis pendens* therein; and that Bowman and the Sutter Canal and Mining Company knew and had notice of said mortgages, and of the pendency of said action when said property was conveyed to them.

That the Sutter Canal and Mining Company, after buying said property, and while improving it, requested the plaintiff to delay proceeding in such foreclosure action, and give it further time to pay said mortgages, as

it needed the funds then on hand to improve said mort-
gaged property, that it was improving it, and that by so
doing was making his security better all the time, and
promised to pay said mortgages with interest thereon, if
the plaintiff would extend the time of their payment, and
that it did pay plaintiff $1,750 on account of the interest
thereon.

That plaintiff, relying upon such statements, delayed
his foreclosure proceedings until said company was ad-
judged a bankrupt, on March 8, 1872, and Joseph Naph-
taly was appointed assignee, and said mortgaged property,
so improved, was assigned to him.

That on October 4, 1873, plaintiff obtained judgment
in said foreclosure action, and said mortgaged property
was sold by the sheriff of Amador County to plaintiff,
and a certificate of sale duly issued to him.

That, pursuant to an order of sale made by the United
States district court on July 17, 1873, Joseph Naphtaly,
as assignee of said bankrupt, sold to the defendant the
said property assigned to him, subject to plaintiff's
mortgages; that said sale was confirmed by said court,
and conveyance executed by said assignee on October
11, 1873.

That the property so conveyed to defendant was the
same property that was mortgaged to plaintiff, although
altered and improved, and that all the franchises, water
rights, etc., were those formerly owned by the Butte
Ditch Company.

That defendant took possession of said property under
the deed conveying the same to it, and called the same
the Amador Canal and Mining Company's ditch, by
which name it has ever since been known, and com-
pleted the improvements commenced by the Sutter Canal
and Mining Company; but that all said improvements
were made under the rights, franchises, etc., aforesaid,
and to use to better advantage the water rights covered
by said mortgages, and passed to plaintiff under the

sheriff's deed, and plaintiff is now the owner of all of said property.

That the improvements so made by the defendant consisted of a ditch larger than the old Butte ditch, and upon a different grade, and extended from the lower end of Bald Rock up the north side of the north fork of the Mokelumne River about nine miles to the point where said mortgagors had removed their location of their water rights, and took the waters of said stream thence, and has ever since and still continues to take said water thence; that all of said works so constructed by defendant were on the same general line as the old Butte ditch, but a few feet above the same, except at Bald Rock, where they came together; and that in the construction thereof the defendant filled up and destroyed the old Butte ditch above Bald Rock, and took and used the lumber of which the flumes thereof were constructed for cabins, blacksmith-shops, etc., and appropriated to its own use the iron pipe put in at the head of the old ditch in 1868; that the defendant connected its works, so constructed by it, with those constructed by the Sutter Canal and Mining Company at the point just below Bald Rock, and they now constitute one connected line of ditch, by means of which defendant is now enjoying and has ever since prior to December 12, 1874, enjoyed the water rights mortgaged to plaintiff.

That on the 9th of May, 1874, Joseph Naphtaly, on behalf of defendant, commenced an action against plaintiff, and obtained an injunction against him, whereby the execution of said sheriff's deed was prevented until May, 1884, when final judgment was rendered in said action, and said injunction was dissolved.

That on December 12, 1874, defendant began an action against plaintiff and said sheriff to set aside said foreclosure and sale to plaintiff, and procured an injunction enjoining the sheriff from executing and plaintiff from procuring a deed of said property.

That in both of these actions against plaintiff Thomas Mitchell, the plaintiffs alleged that the property sold to this plaintiff at foreclosure sale was the property which by the assignment in bankruptcy aforementioned vested in Joseph Naphtaly as assignee of said company; and said actions were prosecuted to relieve the property purchased by defendant at the assignee's sale from plaintiff's mortgages; that the action of the Amador Canal and Mining Company against this plaintiff was determined in his favor, and that it was therein decreed that said judgment, decree, and sale were valid and binding upon the property purchased by defendant herein at assignee's sale, and that this plaintiff was entitled to the possession of said property, and that the ditch property, water rights, etc., purchased by defendant herein at said assignee's sale, were liable for the payment of plaintiff's mortgages.

That defendant, ever since November 10, 1873, has been in possession of said property, and has received the profits, etc., thereof; that plaintiff, prior to the commencement of this action, demanded, and was refused by defendant, the possession of said property; and that he has not been damaged except by the loss of the rents, etc., of said property, the amount of which plaintiff did not prove.

That claim of defendant against plaintiff to said property is unjust and unfounded; that said defendant is not insolvent.

That in 1881 defendant repaired the lower end of the old Butte ditch below the tunnel, and ran water through it for some time, which water was conveyed to it from the new line of ditch and sold by defendant to parties for use.

That defendant does not own the new line of ditch constructed by it and said Sutter Canal and Mining Company, nor any of the appurtenances, water rights, or franchises pertaining thereto, but that such ditch and appurtenances were constructed to take the place of the old Butte ditch, and for the purpose of using the water

rights and franchises thereof to better advantage; and
the title to all of said property, including the water
rights, etc., pertaining thereto, became vested in plain-
tiff by said sale and sheriff's deed in said foreclosure
proceedings, and he has ever since been and is now the
owner thereof.

The plaintiff is not entitled to recover any rents or
profits owing to a failure of proof as to amount.

As conclusion of law the court found that the plaintiff
is entitled to, and that he have and recover from the
defendant, and all persons claiming under defendant
subsequent to April 6, 1870, the possession of all of the
property now known as the "Amador canal," with all
of its appurtenances as the same is now used, together
with the water rights and franchises belonging thereto;
and that the defendant, and all persons claiming under
it subsequent to April 6, 1870, be forever enjoined and
debarred from asserting any claim to any of said prop-
erty adverse to plaintiff; and that the plaintiff have his
costs.    The further facts are stated in the opinion of the
court.

*M. A. Wheaton, A. C. Adams,* and *Stanly, Stoney &
Hayes,* for Appellant.

*Tilden & Tilden, Lindley & Spagnoli,* and *Garber &
Bishop,* for Respondent.

PATERSON, J.—A full statement of the facts found by
the court is filed herewith.

This is an action to determine the title to and recover
possession of a canal of great value "formerly known
as the Butte ditch, or canal, afterwards called the Ama-
dor canal, as the same is now held and used by the de-
fendant, together with all the franchises, and water
rights belonging thereto, and all the appurtenances and
rights connected therewith," also to recover the rents,
issues, and profits, and damages, amounting to the sum
of one million dollars.

Plaintiff claims title to the property under the decree of foreclosure, entered October 4, 1873, and a sheriff's deed given in pursuance of a sale thereunder, dated June 6, 1884. The foreclosure suit was commenced on April 6, 1870, and a *lis pendens* was filed the same day.

The mortgages upon which the decree was based were executed and delivered to plaintiff by Stickles and others, who then owned the property, in August and September, 1868. Respondent claims that the new line of ditch was constructed to take the place of the old ditch, under the rights, privileges, and franchises acquired from the mortgagors for the purpose of using those rights, privileges, and franchises to better advantage, and that the property as it now exists is but an improvement upon the old ditch, and as such subject to the mortgages. Appellant claims that the property affected by the decree of foreclosure is not the property for the recovery of which judgment against appellant has been rendered in this case; that it is not the Butte ditch extended or improved, but another and different aqueduct, called the Amador canal, and that a comparison of the descriptions in the decree of foreclosure and in the judgment herein makes this apparent.

In the mortgages, *lis pendens*, decree of foreclosure, and sheriff's deed, the property is described as follows:—

"That certain ditch commonly called the Butte ditch."

In this case the court found that plaintiff was the owner of and entitled to the possession of the following described property:—

"All that certain property now known as and called the 'Amador canal,' with all its appurtenances as the same is now used, together with the water rights and franchise thereunto belonging, which is more particularly described as follows:—

"Commencing at the Old Pine-log Crossing, on the north fork of the Mokelumne River."

"Conveying water thence to Slab Town, Butte City, and other localities in Amador County, also to the vicinity of Jackson, Scottsville, and other points in said Amador County."

"Together with all the appurtenances, flumes, aqueducts, branch ditches, reservoirs, pipes, and cabins

"All the canal and works known as the 'Amador canal,' situated in the county of Amador, commencing at the north side of the north fork of the Mokelumne River at a point where said canal taps and takes the waters of said north fork of the Mokelumne River, about two hundred rods above the point which is known as 'Pine-log Crossing.'

"And thence running in a westerly direction down the north side of said stream, about eighteen miles, more or less, to a tunnel, and to the placer mines in the vicinity of Slab Town.

"From thence through a tunnel, in a general northwesterly direction, following the sinuosities and meanderings of said canal twenty-two miles, more or less, to a point on Tanner's ranch, in the town of Sutter, Amador County, and in the vicinity of the Amador mine.

"Together with all the flumes, ditches, and branch ditches, iron pipe, aqueducts, buildings, cabins,

connected with or in any manner belonging to the ditch property above mentioned, with the right to take water from the north fork of the Mokelumne River." reservoirs, dams, and tunnels belonging to said works, or in any nature connected therewith, and including the branch ditches extending to Jackson and Plymouth, and also all franchises, rights of way, and all water rights, and all locations for the taking of water, with the right to the waters of said north fork of the Mokelumne River, and all hereditaments and appurtenances in any way belonging to said property."

There is nothing in the language of these two decrees to indicate that the property described is the same in each. The names of the ditches, the courses, and the termini are different, and the branches, extensions, and franchises named in the decree herein are manifestly not included in the language used in the decree of foreclosure. Furthermore, it is true, as a matter of fact, that the Butte ditch and the Amador canal are not and never were physically identical at any point between their termini. The learned judge of the court below did not base his conclusion as to the legal identity of the two ditches upon any assumption of identity in fact, but upon the propositions that the Sutter Canal Company and the Amador Canal Company, in their constructions of the new ditch and its branches, always considered them subject to Mitchell's mortgages; that the property was treated as the same ditch, though under a different name, and that the new ditch was built for the purpose of using to better advantage the water rights and franchises of the old Butte ditch,—was constructed to take its place. In a written opinion the court thus clearly states

the fact in this regard, and defines the issue of law upon which, in its opinion, the case turned:—

"As soon as the Sutter Canal and Mining Company came into possession of the Butte ditch property, July 16, 1870, it commenced the construction of a new ditch of larger capacity than the old Butte ditch, on the same general line, but higher up the hill and of a lesser grade, the new ditch having a grade of eight feet to the mile, whereas the grade of the Butte ditch was thirteen feet four inches. In digging the new ditch, the old Butte ditch, being lower down the hill, was filled up, the flumes were broken down, and the lumber of which they were built was used by the Sutter Canal and Mining Company to build cabins for their workmen, blacksmith-shops, etc. The new ditch was built principally in the ground excavated; the old ditch consisted chiefly of flumes. In blasting out the new ditch, the rocks rolled down the hill and broke down the flumes of the old ditch. In fact, no attention was paid to the old ditch. At a place called Bald Rock the new canal connected with the old Butte ditch, and for a distance of two miles below Bald Rock the new ditch was right over the Butte ditch. In 1872 the Sutter Canal and Mining Company became insolvent, and such proceedings were had that its property was sold by order of the United States district court to the Amador Canal and Mining Company, free and clear of all liens and encumbrances, except from a mortgage lien claimed by Thomas Mitchell on certain franchises of said bankrupt. The Amador Canal and Mining Company completed the ditch commenced by the Sutter Canal and Mining Company, in the prosecution of which it pursued the same course as its predecessors, filling up the old Butte ditch, breaking down the flumes,— treating it, in fact, as of no value at all. In 1868, subsequently to the execution of the two mortgages to the plaintiff, the Butte Ditch Company extended their ditch, by means of an iron pipe some thirteen hundred feet long, with a

carrying capacity of fifteen hundred inches of water, to a place on the Mokelumne River about two hundred rods above Pine-log Crossing.

"Considerable has been said about the subsequently acquired title; but there is no question in this case of any future-acquired title, neither by the mortgagors nor by their grantees. It is future-acquired property, not future-acquired title to the property mortgaged, which is the issue in this case. . . . . Plaintiff's contention is, that his mortgages on the Butte ditch property, franchises, and water rights covered the property of the defendant, not because the mortgagors or their grantees and successors in interest have acquired any better title to the property mortgaged subsequently to the execution of the mortgage, nor yet on the ground that the Amador canal should be considered as an appurtenance to the Butte ditch, but because the new canal was constructed to take the place of the old Butte ditch, and for the purpose of using to better advantage the water rights, privileges, and franchises belonging to the last-mentioned ditch. In fact, because, as plaintiff contends, the Amador canal is an improvement of the mortgaged property, and goes to feed the mortgages. . . . . It was the intention of the Sutter Canal and Mining Company to use, by means of the canal it was constructing, the water right and franchises purchased by Bowman of the Butte Ditch Company. It was for this purpose it commenced the building of the new canal. The Amador Canal and Mining Company, after its purchase of the property, completed the work inaugurated by the Sutter Canal and Mining Company, and extended the ditch from Bald Rock up to the place on the north fork of the Mokelumne River, about two hundred rods above Old Pine-log Crossing, the same place to which the Butte Ditching Company removed their water right location in 1870, claiming five thousand inches of water; at this place the Amador canal tapped the river and took out the water, and at

the same place it has taken out and used the water ever since.  Bowman went into possession of the Butte ditch and water right under the title acquired from the Butte Ditch Company.  The Sutter Canal and Mining Company commenced the construction of the new canal for the purpose of using such water right.  The Amador Canal Company, upon the completion of the canal, did use such water right, and has used it ever since.  If the water right and franchises of the Butte Ditch Company had not been purchased by Bowman, no new canal could have been constructed, because neither Bowman nor the Sutter Canal and Mining Company or this defendant ever took up, located, or acquired any water right other than that of the Butte Ditch Company. . . . . . Counsel for defendant says the new canal is about thirty miles in length, and from the tunnel extends in an entirely new direction to the Tanner reservoir, near Sutter Creek; that no part of this new canal had ever been owned by the mortgagors, — no part of it covered by the description or terms or language of the mortgage.  All this is true, but, as I said before, the new canal would not and could not have been constructed without having first obtained the water right of the Butte Ditch Company (the mortgagors), and it was built for the purpose of using such water right. . . . . Although the Amador canal is not, strictly speaking, the old Butte ditch extended and enlarged, as alleged in plaintiff's complaint, and is, in fact, a new ditch, it was built for the purpose of using to better advantage the water rights and franchises of the old Butte ditch; it was constructed to take its place in lieu of it, and is in law subject to plaintiff's mortgages."

The findings of fact and conclusions of law are in consonance with the opinion of the court.

At the trial, evidence was admitted, over the objection of the defendants, upon the questions whether the officers of the Sutter Canal and Mining Company, or of this defendant corporation, ever claimed that the ditch they

were constructing was separate property, and not subject to the mortgage, and for what purpose the plaintiff lent the money. Evidence was admitted also of declarations made by the officers of the corporation at the time the new ditch was being constructed, to the effect that the new ditch "was improving the property all the time and helping the security, and that it was for this reason that proceedings in the foreclosure suit were delayed." This evidence was allowed on behalf of the plaintiff as matter of estoppel, and we are unable to perceive, in view of the evidence thus admitted, upon what theory evidence offered by the defendant tending to show that no reliance was placed by the plaintiff upon such declarations, and that he did not in fact consider the property as subject to the mortgage, was excluded. Thus plaintiff's objection was sustained to defendant's offer to prove by Joseph Napthaly that "while he, Napthaly, was assignee, Mr. Mitchell stated that his mortgage did not cover anything of the bankrupt estate except the Butte ditch and the water right connected with it; that it did not cover any portion of the new ditch; . . . . and that Mr. Mitchell repeatedly, in conversation at Mr. Napthaly's office (private conversation, as well as in testimony in the United States district court), stated that his mortgage only covered the Butte ditch property, and for that reason requested these parties to stipulate that he might withdraw upon the ground that they really had no interest in objecting to the withdrawal of his claim from the United States district court in the bankruptcy proceedings." Defendant offered to show that plaintiff Mitchell had called Judge Thompson as a witness in the bankruptcy proceedings, to prove by him that the mortgage only covered the Butte ditch and water right of the bankrupt estate, that the Butte ditch and water right were at that time of no value, and that it would cost more to put the Butte ditch in repair than it would be worth after it was repaired, but the offer was excluded.

If it was material and proper for plaintiff to prove that he believed the property was subject to the mortgage, it would seem to be proper and just to allow the defendant to show that he never believed any such thing.

But we cannot see how any such evidence can be material in this case. The mortgage has been foreclosed; it has become merged in the decree. The decree has been executed. The sheriff's deed has passed to the plaintiff. The action which culminated in that decree was commenced for the purpose of subjecting the property liable therefor to the satisfaction of plaintiff's claim —the six thousand dollars and interest. The issue therein raised the question, What property was thus liable? and the determination of that issue, by the findings and judgment therein, conclusively settled the rights of the plaintiff and defendant herein as to the ditches, reservoirs, and franchises which could be taken, and which were to be sold in satisfaction of plaintiff's mortgage. The plaintiff had his day in court upon that issue; he offered his proof; the court determined the matter, and described the property as we find it in the decree. With that determination plaintiff was satisfied, for he took no appeal. If the description of the property in that decree was insufficient or uncertain, it seems to us it was the duty of the plaintiff to ask the court in that case to make it sufficient and certain. The court followed the description contained in the mortgage. If there were any equities entitling the plaintiff to property not included in the language of the mortgage, or if there were matters of estoppel *in pais* extending the rights of the plaintiff to other ditches and franchises than those named in the mortgage, those matters ought to have been pleaded and proved in that action. (*Marshall* v. *L. S. W. Co.*, 5 Pac. Rep. 101.) It is important in such cases that the pleadings, the mortgage, and the decree should be certain as to the property affected; otherwise purchasers *pendente lite* would be at the mercy of the

mortgagor and mortgagee. The security offered by mortgages would be destroyed. The decree would determine nothing as to the property pledged, and would be the commencement of endless litigation, instead of a final determination of the rights of the parties interested. The policy of the law with regard to mortgages requires that they give definite information, not only as to the debt secured, but as to the property mortgaged. The rule of law which declares that to be certain which can be made certain is not applicable in a case like this. If there is any uncertainty as to the property described in the mortgage, and which is subject to the mortgage, it should be made certain in the pleadings and proof, so that the decree may leave nothing in doubt. The information which the law requires to be given to creditors and purchasers by the mortgage and the foreclosure proceedings is that certainty as to the location and description which will enable one to know where the property is, and to distinguish it from other property of the same character which may be adjacent to it. (*Herman* v. *Deming*, 44 Conn. 125.)

We cannot see how the inquiry in this case, considered as an action of ejectment or to quiet title, can properly extend any further than to determine the identity of the property named in the decree of foreclosure. The defendant and the Sutter Canal Company, it must be remembered, were purchasers *pendente lite*. They were not made parties to the suit, and, of course, were bound by the decree against their grantors only to the extent of the property described in the complaint, decree, and the *lis pendens*. These, as we have seen, described the property exactly as it was described in the mortgage. Nothing is said in the complaint, *lis pendens*, or decree about the new water right acquired after the execution of the mortgage. It matters not whether the water right is appurtenant to the ditch, or the ditch appurtenant to the water right. If there was any other ditch

than that *commonly known* as the Butte ditch, commencing at Pine-log Crossing, etc., it ought to have been described so that the sheriff and creditors might know that it passed by the decree; and if there was a new or additional water right of five thousand inches, it could not be appurtenant to the Butte ditch, which already had the right to all it could carry,—about 750 inches.

Respondent claims that the Butte Ditch Company had the right to all the water of the stream; that the new works were simply intended as a new and improved method of enjoying the rights and franchises held by that company; and that "this case is not to be determined by simply referring to the descriptive language in the various instruments, but all of the facts and circumstances are to be considered, as well as the declarations and acts of the parties in their dealings with the property illustrating their object and intention. The assertion that there are two descriptions does not determine whether one was built to use to better advantage the franchises and rights of the other, nor does such assertion determine whether the present property is in law an improvement of the property mortgaged."

It is true the court found "that said Butte Canal and Ditch Company was the owner of said water, water rights, privileges, and franchises, and the right to construct canals and ditches to convey *the waters* of said stream"; but if this is a finding that the Butte Ditch Company was entitled to all the waters of the north fork of the Mokelumne River, it is a finding which is not supported by the evidence. We have searched the record in vain for evidence of such fact. In the articles of incorporation it is stated that the object of the Butte Ditch Company is to take the waters of the north fork of the Mokelumne River; but in the absence of proof of an actual appropriation and diversion, this evidence is not sufficient to show that the Butte Ditch Company enjoyed the franchise to the extent claimed for it. The

right mortgaged was the right to take water from said stream, no mention being made of the quantity. Conceding that this language used in the mortgage is broad enough to cover all subsequently acquired franchises without the necessity of an averment in the complaint in foreclosure of such additional right, we do not perceive any advantage to the plaintiff. In January, 1870, a notice was posted at a point two hundred rods above Pine-log Crossing, stating that the owners of the Butte Canal and Ditching Company had removed their location or point of tapping the north fork of the Mokelumne River to that point and "appropriated of the waters of the north fork of the Mokelumne River at this point five thousand cubic inches"; and that they were going on with due diligence to construct a canal of sufficient capacity to carry and distribute said amount of water. The company, however, never succeeded in tapping the river at that or any other point so as to secure the benefit of this notice. The company became insolvent long before they reached that point, and their failure to proceed operated as a forfeiture of their right. The mere act of commencing a ditch, with the intention of appropriating the water, of itself gives no right to the water of a stream. The right depends upon the effectual prosecution of the work. The completion of the ditch and the diversion of the water are necessary elements of title, and the abandonment of the purpose is not so much a matter in avoidance of a title as it is matter showing that no title was ever obtained. The parties prosecuting the work must have the ability to complete the work within a reasonable time, and pecuniary inability to complete the work within a reasonable time cannot be urged as an excuse for not prosecuting the work. (*Kimball* v. *Gearhart*, 12 Cal. 28.) "Appropriation, use, and non-use are the tests of the right." (*Davis* v. *Gale*, 32 Cal. 32.) The right to the water does not exist when the notice is given, and

it may never vest. "The most that is *in esse* is a right to acquire by reasonable diligence a future right to the water." (*N. C. & S. C. Co.* v. *Kidd*, 37 Cal. 316.) The right to five thousand inches of water did not exist at the time the mortgage was executed; and if such right was acquired, being an additional right, — a franchise, — a new property,—it was not covered by the mortgage, because not in existence at the time the mortgage was executed. If the Sutter Canal and Mining Company forfeited its right to five thousand inches by a failure to prosecute the work, no additional water right passed to the defendant here by the assignment in bankruptcy; and defendant's right to the additional quantity of water, if any, must depend upon its own appropriation and diversion. It is unnecessary for us to inquire in this case whether the defendant has ever properly acquired a right to five thousand or more inches of water. The question before us here is, how much water—what property —the plaintiff is entitled to under the description given in the decree of foreclosure. It is proper to say, however, that the defendant offered in evidence the recordation in the proper book of a notice of location of ten thousand inches of water of the Mokelumne River at the point where this ditch connects with the river. This offer was excluded, but there is evidence of an actual appropriation by defendant; and in view of the diversion and the long and uninterrupted use of the waters at that point by the defendant, it will be presumed, for the purposes of this case, in the absence of proof to the contrary, that a notice was properly posted.

In determining whether the property now known as the Amador canal and its appurtenances is an improvement of the original Butte ditch, and incident to it, or such an addition as may be said to have been contemplated by the parties to the mortgage, and constituting a basis for a decree subjecting it to the payment of the debt secured by the mortgages of 1868, it is important

to bear in mind the events which have produced the changes in the character of the property and the order in which they occurred. At the time the mortgages were given (August and September, 1868), the Butte ditch was about nineteen miles and a half in length, and extended from Pine-log Crossing to Slab Town, just as it is described in the mortgage, *lis pendens*, complaint, and decree. Immediately after the Butte Ditch Company received the money from the plaintiff and gave mortgages therefor, the ditch was extended by means of a pipe twelve hundred or thirteen hundred feet above Pine-log Crossing. This pipe carried fifteen hundred inches, which was double the capacity of the Butte ditch. On January 26, 1870, a notice was posted on behalf of the Butte Ditch Company, claiming five thousand inches of water at the point where the new ditch heads. In July, 1870, work was begun upon the first extension, but several miles northwest of the tunnel. This work was done by the Sutter Canal and Mining Company. The company worked toward the tunnel, leaving spaces for flumes. July 15th, the property was conveyed to Bowman, and on July 16th Bowman sold to the Sutter Canal and Mining Company. It was the intention of the company, when it commenced the new construction, to build the ditch to the tunnel, excavate the tunnel, and from there construct the ditch to the point where the new ditch now heads, whenever the company could make sufficient money to enable it to complete the same. It was thought that when a connection was made with the old ditch above the tunnel the company could, by turning the water of the old ditch into the new ditch, and by turning the water down to Sutter Creek, make sufficient money to complete the ditch to the point where the notice for five thousand inches of water had been posted. At that time the company, therefore, knew that it had not sufficient funds to finish the work in a reasonable time so as to comply with the

law applicable to the appropriation of water. The company struggled along with the work, however, completing the greater portion of the ditch to the tunnel, and excavating the tunnel, and built the new ditch along the river above the old ditch until it reached the lower end of Bald Rock. Here the lower end of the flume, which constituted a portion of the old ditch, was elevated so that the water from it ran into the new ditch they had built to that point. The water from the old ditch ran into the new ditch for two weeks after the connection thus made, but it never reached farther than two miles below the point of connection in the new ditch while the Sutter Canal and Mining Company held it. At this point the company failed, and was soon adjudged a bankrupt. The work stopped in the fall of 1871, at which time the water was turned out of the ditch and abandoned until the Amador Canal and Mining Company turned it in again. The Sutter Canal and Mining Company was adjudged a bankrupt in March, 1872. *On October 4, 1873, the decree of foreclosure was entered in the suit referred to; on the 11th of October, 1873, the deed from Naphtaly, assignee in bankruptcy, was delivered to the defendant corporation; and on October 14th the defendant began work on the ditch at the point where the connection had been made with the old ditch at the lower end of Bald Rock.* At this point a flume eighty feet higher than the old flume was placed around Bald Rock to the upper end thereof, and the ditch was constructed to the point where it now heads, and completed in the fall of 1874. Since the completion of the ditch, in 1874, many miles of branch ditches have been built in different places, carrying the water in directions and to points different and far from those reached by the Butte Ditch Company.

How, therefore, can it be said that the property as it now stands is an improvement of the property as originally mortgaged by the Butte Ditch Company, or is an incident to it, or is such an addition as may be said to

have been contemplated by the parties to the mortgage; or that the new ditch was built for the purpose of using to better advantage the water rights and franchises of the old Butte ditch,—was constructed to take its place? It may have been the intention of the Sutter Canal and Mining Company to use, by means of the canal it was constructing, the water right and franchise purchased by Bowman of the Butte Ditch Company; but in its failure to prosecute the work, as we have seen, it never acquired any greater franchise than that which was held by the Butte Ditch Company when it executed the mortgages to this plaintiff. It is said: "If the water right and franchises of the Butte Ditch Company had not been purchased by Bowman, no new canal could have been constructed, because neither Bowman nor the Sutter Canal and Mining Company nor this defendant ever took up, located, or acquired any water right other than that of the Butte Ditch Company"; but there is nothing in the transcript to warrant the statement. A new canal could have been constructed without regard to the franchises held by the Butte Ditch Company, or by Bowman, or by the Sutter Canal Company, and it is not probable that a ditch of such capacity would be built for the purpose of using the water right of the Butte ditch only,— about 750 inches. The inability and failure of the Sutter Canal and Mining Company to prosecute the work of construction left the franchise of the Butte Ditch Company no greater that it was at the time the mortgage was executed.

The quantity of water to which the company was entitled is somewhat uncertain, and we do not mean to express any opinion upon that matter.

There can be no doubt that the Sutter Canal and Mining Company lost its right to the additional five thousand inches claimed by it. The provisions of the code are conclusive. Section 1416 of the Civil Code provides that "within sixty days after the notice is posted the

claimant must commence the excavation or construction of the works in which he intends to divert the water, and must prosecute the work diligently and uninterruptedly to completion, unless temporarily interrupted by snow or rain." Section 1417 provides that "by 'completion' is meant conducting the waters to the place of intended use." Section 1420 provides that "persons who have heretofore claimed the right to water, and who have not constructed works in which to divert it, and who have not diverted nor applied it to some useful purpose, must, after this title takes effect, and within twenty days thereafter, proceed as in this title provided, or their right ceases." See also cases cited under said sections in Deering's Annotated Civil Code.

At the time of the entry of the decree of foreclosure, October 4, 1873, no part of the ditch as it now exists was constructed between the lower end of Bald Rock and the river. Work was not commenced upon that portion of the ditch until ten days after the entry of that decree. There was at the time of the entry of that decree a continuous line of ditch from Slab Town and the tunnel to the point on the river where the iron pipe had been laid, twelve or thirteen hundred feet above Pine-log Crossing. We cannot perceive how any ditch or ditches which were constructed subsequently can be claimed by the plaintiff under the decree. With respect to after-acquired property, it is only when the parties by their contract intend to create a positive lien or charge upon the property that the lien attaches as a charge upon the particular property; or where it is an improvement or extension; or where it is expected to be the fruit of an undertaking already commenced; or a thing which, in the ordinary course of events, will exist at a future time, and which may be said, reasonably, to have been contemplated by the parties to the contract. (*Seymour* v. *C. & H. F. Co.*, 25 Barb. 305; *Barnard* v. *Eaton*, 2 Cush. 302; 1 Jones on Mortgages, sec. 153.) A man cannot grant a thing

which he has not. The thing granted or pledged must have an actual or potential existence. There must be something *in presenti* of which the thing *in futuro* is to be the product, or necessary for its use, or incident to it. If it were otherwise, all property might be fettered with long made and unknown mortgages, and the purchase thereof be made extremely hazardous.

In this state, " a mortgage can be created, renewed, or extended only by writing executed with the formalities required in the case of a grant of real property." There is no mention made in the mortgage of any water right to be thereafter acquired, nor is there any language indicating any intention that the mortgage should cover after-acquired property of the character in controversy. The property is described in the mortgage with certainty. It was at the time of the execution of the mortgage well known, and there is now no dispute as to what property was at that time in existence. The Amador Canal Company received from the assignee a conveyance which in terms described the property as it then existed. The complaint necessarily alleged — in view of the theory of the plaintiff—that the property in controversy "was, and is in fact, the Butte ditch property hereinbefore referred to, although the same had been altered, extended, and improved, and all the franchises, water rights, and rights of way thereby conveyed to said Amador Canal and Mining Company were the franchises, water rights, and rights of way formerly owned by said Butte Ditch Company, . . . . and that said company continued the work of altering and improving said property, . . . . and all the said improvements were made for the purpose of employing to better advantage those water rights covered by said mortgages, and the said property is and was subject to said mortgages of this plaintiff "; but the findings of the court and the evidence show, we think, that the property in controversy is not the old Butte ditch altered, extended, and

improved, and that the Amador canal should not be considered as an appurtenance to the Butte ditch. It is a singular fact that although the name of the ditch was changed after the purchase by the Sutter Canal and Mining Company, and again after the purchase by this company, yet no mention of these changes was made in the descriptions given in the foreclosure proceedings. In the complaint, *lis pendens,* decree, and deed it is described as "that certain ditch commonly known as and called the Butte ditch," etc. Its place of commencement is fixed, and places to which it carries water are named. There is nothing indicating an intention to cover any ditches thereafter to be constructed,—the language being, "together with all the appurtenances, flumes, aqueducts, branch ditches, reservoirs, pipes, and cabins connected with or in any manner *belonging to the ditch property above mentioned,* with the right to take water from the north fork of the Mokelumne River."

The new ditch was not projected at the time the mortgage was executed, and there is nothing to show that it was at that time ever contemplated.

In *Ellison* v. *Jackson Water Company,* the court considered a mortgage which, by its terms, covered not only the works completed at the time of the execution of the instrument, but also all work then in progress and thereafter to be constructed by the company for conducting and distributing water, and yet Mr. Justice Field, in delivering the opinion of the court, said: "This broad language cannot, however, we apprehend, give a lien upon ditches for the construction of which no steps had been taken by a survey and location of lines, and which rested merely in contemplation. Some specific right of way, capable of identification from a previous survey or location, would seem to be necessary to constitute such property as is capable of mortgage or transfer so as to pass subsequently constructed works thereon." (12 Cal. 554.)

Although this portion of the opinion appears to be *dictum*, it is nevertheless in accord with the weight of authority, and establishes a safe and certain rule for the protection of mortgagor, mortgagee, and creditor. (While there is no evidence that there are in this case any creditors of the present owners of the property, there is no safe principle applicable which does not contemplate the rights of third persons who are bound only by the record.)

And in railroad cases where the termini of the road are given in the mortgage, and authority is thereafter given to extend the road, such extension is not subject to the mortgage, unless the language of the instrument clearly and expressly includes such extensions. (*Randolph* v. *N. J. W. L. R. R. Co.*, 28 N. J. Eq. 49; *Chapman* v. *Railroad Co.*, 26 W. Va. 310.)

It is claimed that *Hungarian Hill G. M. Co.* v. *Moses*, 58 Cal. 168, is a case directly in point, and conclusive herein. In that case the principal property mortgaged was an extensive set of mining claims known as the Kelly & Co. claims. There was mortgaged in connection with said claims all the ditches, reservoirs, etc., used for working said claims. The ditches owned by the defendant in that case were used exclusively for the purpose of conveying the waters of Gansner Creek and intermediate streams upon said claims. It clearly appears from the facts in that case that all of the works constructed by Gurnee, and all of the water rights which he acquired, if any, were acquired solely for the purpose of being used in connection with the mines, which were the principal property mortgaged, and as such were appurtenant to the mines. In his (Gurnee's) deed to the Hungarian Hill Gold Mining Company, he particularly described each parcel of the property, and provided that the whole thereof was subject to the mortgage which he had executed to the defendants, and that plaintiff should fully discharge and pay the same. In 1875, the plaintiff

in that case, for convenience in working the claims, moved one of the water-pipes to the Hersey claim for the purpose of working up the channel to the Kelly & Co. claims, and of working said claims to better advantage. In the foreclosure proceedings, the Hungarian Hill Gold Mining Company was a defendant, and duly served with summons. A decree was entered in favor of the plaintiff, Moses, foreclosing said mortgage, and directing the sale of the "said Kelly & Co. mining claims, and all water-ditches, including the Salt Creek ditch, with all the water, water rights, and privileges belonging to the said water-ditches, and each of them, and all reservoirs used, had, and belonging to said mining claims." In that case Gurnee was the mortgagor and the owner of all the property in dispute, although the new ditch and reservoir were built by him after he executed the mortgage. The new ditch was clearly appurtenant to the principal property mortgaged. Both Gurnee and the Hungarian Hill Gold Mining Company were made parties to the foreclosure suit. The language employed in the mortgage to describe the property in that case was comprehensive, and, in view of the use made of the water, can be construed fairly to include the new property. It described the mining claims, and *"also all the water-ditches leading water onto said claims,* including the ditch from Salt Creek, with all the water, water rights, and privileges belonging to said water-ditches; *also all mining-tools, implements, tunnels, cuts, flumes, and reservoirs used, had, and belonging to said claims,* and every part and portion thereof; together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging, or in any wise appertaining."

In this case there is no evidence of an agreement on the part of the defendant to pay the mortgages on the mortgaged property. The mortgagors never owned any portion of the property which is here in dispute and described as the Amador canal. The mortgage was given

upon the Butte ditch, which was not appurtenant to any other property mortgaged, except to the water right at Pine-log Crossing. The water here is not used, or intended for use, at any particular place, or for any particular purpose, but is intended for sale to other parties. In this case no part of the property in dispute existed when the foreclosure suit was commenced, and neither the Sutter Canal and Mining Company nor the Amador Canal and Mining Company was a party to the suit. As stated by the respondent in his brief in *Hungarian G. M. Co.* v. *Moses*, the property there in controversy "was clearly but an enlargement of a ditch and water right, conceded as belonging to the *estate mortgaged,* or as an improvement thereon. The mortgagor in making it looked to the redemption of the property, and made the expenditure for his own benefit. He knew that he could save himself from loss by paying the debt for which the property was mortgaged. With this in view, he conveyed the whole property to plaintiff, expressly providing in the deed that plaintiff took the same subject to such lien, and that it should pay and discharge the mortgage."

In *Quirk* v. *Falk,* 47 Cal. 453, the court did not say that the water-ditch and the water right thereto appertaining could not be appurtenant to a mining claim, but simply said that the plaintiff had failed to prove that the larger portion of the water was used in working those claims, and had failed to prove that the water-ditch and water right thereto appertaining became appurtenant to the Monitor claims.

In *Wood* v. *Whelan,* 93 Ill. 153, cited by the respondent, the new gas-pipe works were held to be simply additions, fixtures, and therefore appurtenant to the property mortgaged. It was there said: "The granting clause of the mortgage is very comprehensive, and was, no doubt, intended to, as it does, include everything appertaining to the gas-works." A large number of cases has been cited by the respondent, but we deem it unnecessary, in view

of what has been said herein, to review them at length. They are nearly all cases of mortgages upon railroad property. In some of the cases cited the court held that the mortgage by its terms covered after-acquired property; in others, that after-acquired property passed as an incident to a franchise, as an accession to the subject of the mortgage, because essential to the exercise of the franchise and incident to it.

In *Sparks* v. *Hess*, 15 Cal. 186, it was held in effect that the structure—the bridge—was the superior thing, and that the land on either side passed as appurtenant to it. The property conveyed was "a certain bridge, located, situated, and lying on the south fork of the Yuba River, etc., known as Sparks's bridge, across the south fork of said river, together with the toll-houses, stables, and also the right and privilege of said Sparks in and to the dug road there made on each side of said bridge, together with all the privileges and appurtenances appertaining and in any wise belonging to said bridge." Where the structure is the principal thing conveyed under such circumstances as appeared in that case, it will carry with it the title of the grantor in the land upon which it stands, or with which it is connected.

2. The court found that in the action of the *Amador Canal and Mining Company* v. *Mitchell*, the question was litigated as to whether the property acquired from the assignee by the Amador Canal and Mining Company was subject to the said mortgage, and that, after hearing and trial thereof, it was finally determined in favor of this plaintiff. This, we think, is an erroneous construction of the judgment in that case. The plaintiff there did not seek to have construed the decree of foreclosure, nor to determine the scope or effect thereof. The action was brought to set aside the decree of foreclosure on the ground of fraud. The title to the Amador canal was not there litigated. The court determined that there was no fraud, and that the Amador Canal and Mining Company,

being a purchaser *pendente lite,* was bound by the decree of foreclosure, though not made a party to the suit. The question raised here, namely, what property is included in the descriptions given in the complaint, *lis pendens,* decree, and sheriff's deed, was not considered. (*Amador Canal and Mining Company* v. *Mitchell,* 59 Cal. 458.)

3. There can be no doubt, we think, that the acts of the defendant in destroying the old ditch and flume from Bald Rock toward the river, and in converting the lumber to its own use, were unlawful, and rendered the company liable in an action for damages. It is a question, however, whether such damages can be recovered in this action. It is difficult to determine from the issues herein whether the action can be considered anything beyond one in ejectment, and for rents, issues, and profits. There is, however, an allegation in the complaint that "in the performance of said work the said ditch or canal [Butte ditch], as originally constructed, has been to a large extent filled up and destroyed," etc. There is also an allegation "that, by reason of the premises and the facts hereinbefore alleged, the plaintiff has been damaged by the defendant in the sum of five hundred thousand dollars "; and there is a prayer for the recovery from defendant of the sum of five hundred thousand dollars damages.

There is also a prayer for the appointment of a receiver, for the possession of the canal and water rights, and for such other and further relief in the premises as shall be just and equitable.

There was no demurrer to the complaint, but defendant answered, denying specifically the allegations of the complaint, and the trial seems to have proceeded upon the theory that it is an action to recover the land, and the rents, issues, and profits thereof.

The defendant was not bound to use, improve, or repair the property, but it was the duty of the defendant, when it went into the possession of the property under

the deed from Napthaly as assignee, at least not to destroy it. It had the right of redemption and actual possession. The defendant was in one sense a bailiff for the plaintiff with respect to such property, and as such during the time it held possession was bound to do no act that would injure it. The defendant destroyed it, and must now be held responsible for the waste. We think that the plaintiff may recover in this action the damages occasioned to him by the acts of the defendant, notwithstanding the fact that he has heretofore claimed other relief.

The remedy for waste is ordinarily at law, but where it is for the purpose of preserving the security of a mortgage, equity will interpose by injunction to prevent future waste, and in the same action an accounting will be decreed, and compensation given for past waste. For this purpose "the remedy by bill in equity is so much more easy, expeditious, and complete that it is now almost invariably resorted to." (2 Story's Eq. Jur., sec. 917; 2 Story's Eq. Jur., secs. 515-518.) Both before and after a decree of foreclosure, chancery will interpose to prevent any injury to the inheritance which depreciates the mortgage security, and the court will not "turn the plaintiff round to an action at law," but will require an accounting for waste committed by the one in possession. (1 Hilliard on Real Property, secs. 375-377; *Sarles* v. *Sarles,* 3 Sand. Ch. 601.) In this respect "the court of chancery does not now treat questions of destructive damage to property exactly as it did forty or fifty years back; its protection being more largely afforded than it then generally was." (Addison on Torts, sec. 252.)

The right of the plaintiff to take water from the north fork of the Mokelumne River still exists, to the extent that the Butte ditch owned the same at the time the mortgage was executed; but plaintiff will be entitled to recover the actual damage sustained by reason of the negligent and wrongful acts of the defendant. From

the lower end of Bald Rock toward the river, the Butte ditch was destroyed, and the flume and pipes were appropriated by the defendant, and plaintiff prevented from using his water right. The measure of damages, therefore, must be the value of property destroyed, and compensation for the loss of the use of his water right for such period as would have been necessary to enable the plaintiff to reconstruct his ditch after the same was destroyed from the point where it tapped the river to the lower end of Bald Rock.

If the new ditch between these points is constructed upon a line which renders it necessary for plaintiff to build his ditch upon another more difficult and more expensive line than that upon which the old ditch was built, plaintiff will be entitled to additional damages to the extent of the difference in cost of construction upon the old line, and the cost of construction upon the most feasible line remaining.

Judgment and order reversed, and cause remanded for a new trial, with leave to the parties to amend their pleadings if they shall be so advised.

Searls, C. J., McFarland, J., and Sharpstein, J., concurred.

Rehearing denied.